STATE of Tennessee, Appellant,

v.

Carla COLEMAN, Appellee.

Court of Criminal Appeals of Tennessee,
at Nashville.

Nov. 22, 1989.

Permission to Appeal Denied by
Supreme Court May 21, 1990.

Jeff K. Walker, Goodman and Walker,
Springfield, for appellee.

Charles W. Burson, Atty. Gen. and Re-
porter, Kymberly Lynne Anne Hattaway,
Asst. Atty. Gen., Nashville, Arthur F. Bie-
ber, Asst. Dist. Atty. Gen., Clarksville,
Dent Morriss, Asst. Dist. Atty. Gen.,
Springfield, for State of Tenn.

## OPINION

WADE, Judge.

The state appeals a judgment of the trial
court granting the motion of the defendant,
Carla Coleman, to suppress evidence.

The sole question presented for review is
whether the trial court committed error in
its determination that there was not a rea-
sonable suspicion for the investigatory
stop.

We find no error and affirm.

On August 9 and 10, 1988, Officer Stan-
ley Henderson of the Robertson County
Drug Task Force received information
about a possible drug transaction from a
confidential informant Henderson had pre-
viously arrested on other charges.

The informant, whom "he had previously
arrested," told the officer that between
2:00 and 2:30 P.M. on August 10, a white
female, between 25 and 35 years of age
and whose first name was Carla, would be
en route to Robertson County from David-
son County on Highway 431 South. The
informant stated that she would be driving
an older model black Monte Carlo, would
have in her possession several pounds of
marijuana, and would ultimately drive to a
location on Washington Road.

The informant, who had never been used
as a confidential source in any previous
police investigation, did not reveal to the
officer how he knew about the impending
transaction.

At about 1:00 P.M. on August 10, Officer
Henderson instructed Deputy Marty
Groves of the Robertson County Sheriff's
Department to intercept any automobile fit-
ting the description of that provided by the
informant. At about 2:30 P.M., after a
surveillance period of 45 minutes, Deputy
Groves observed an older model black
Monte Carlo travelling from Davidson to
Robertson County on Highway 431 South.
As the deputy pulled behind the vehicle, he
saw its operator adjust the rear view mir-
ror with her right hand. The deputy fol-
lowed for about two miles, noted that the
defendant weaved as she looked into her

rear view mirror, and then ran a radio license plate check.

When Deputy Groves learned the plates were registered in the name of Carla Coleman, he turned on his blue lights and followed the defendant into the parking lot of Debbie's Pantry. Officer Henderson arrived on the scene, explained to the defendant why she had been stopped, and asked for the defendant's consent to a search of the vehicle. The defendant consented ànd directed the officers to a tote bag located in the back seat of her vehicle in which the officers found six one pound packages of marijuana. While Deputy Groves testified that a second reason he had stopped the vehicle was because he suspected alcohol use by the operator, he admitted that he never questioned the defendant in that regard, conducted no field sobriety tests, and cited no traffic violations.[1]

█ Our determination of the reasonableness of the stop of the defendant's vehicle turns on whether Deputy Groves had an "articulable and reasonable suspicion" that the vehicle or its occupant was subject to seizure for violation of the law. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979). While probable cause is not necessary for an investigative stop, it is a requirement that the officer's suspicion be supported by specific and articulable facts. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *Hughes v. State*, 588 S.W.2d 296, 305 (Tenn.1979); *State v. Foote*, 631 S.W.2d 470, 472 (Tenn.Crim. App.1982).

█ The particular facts of this case, however, present an uncommon analysis of the investigatory stop rule. The stop was made exclusively upon the basis of information supplied by an informant and not upon the officer's own observations. In such instances, courts have generally resorted to a comparative application of the probable cause standard:

[I]t is still sensible after *Gates*, in trying to ascertain in informant cases "the de-

gree of relaxation from probable cause standard by the *Williams-Terry* standard of reasonable cause to stop," to examine those particular factors. That is, it remains useful to ask just how differently those factors weigh in the determination when the issue concerns grounds to stop rather than grounds to arrest or search (citations omitted).

3 W. LaFave, *Search and Seizure*, § 9.3(e), at 477 (1987).

In *State v. Jacumin*, 778 S.W.2d 430 (Tenn.1989), our Supreme Court, on October 2, 1989, adopted the two-prong test of *Aquilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), regarding the adequacy of information necessary to support the issuance of a search warrant. Although no warrant issued in this case, we find *Jacumin* helpful in our analysis just as *Gates* provides assistance in the interpretation of the federal constitution.

In *Aquilar*, the United States Supreme Court held that there must be a "basis of knowledge" when the officer relies on hearsay information from a confidential informant:

[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, ... was "credible" or his information "reliable."

The search warrant in *Aquilar* was held invalid because nothing in the affidavit established that the affiant had personal knowledge of the matter attested to or that the affiant's source spoke from personal knowledge rather than a mere suspicion. *Aquilar*, 378 U.S. at 113, 84 S.Ct. at 1513.

In *Spinelli*, the affidavit upon which search warrant was based did not provide the magistrate any reason to support the

---

**1.** The trial judge found as a matter of fact that any detention based upon suspicion of a driving offense was an "afterthought" on the part of the officer. The arresting officer said he intended to stop her anyway.

officer's conclusion that the informer was reliable. Nor did it contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. 393 U.S. at 416, 89 S.Ct. at 589.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the information supporting the issuance of the search warrant was received in an anonymous letter. There was nothing upon which the investigating officers or the magistrate who ultimately issued a search warrant could conclude that the author was reliable. Significantly, the information supplied did not indicate the basis for the writer's predictions as to the future drug transaction. Yet, because of the "totality of the circumstances," the warrant was upheld.

The fourth amendment to the United States Constitution secures the "right of the people ... against unreasonable searches and seizures ... and no warrant shall issue, but upon probable cause, supported by oath or affirmation." In *Jacumin,* our Supreme Court compared the federal constitution's language with Art. 1, § 7 of the Tennessee Constitution:

> [T]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, *without evidence of the facts committed,* or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted. (Emphasis added.)

Based upon that difference, the Tennessee Supreme Court refused to adopt *Gates* as an adequate test of probable cause:

> We agree with the courts cited above that the principles developed under *Aquilar v. Texas, supra,* and *Spinelli v. U.S., supra,* if not applied hypertechnically, provide a more appropriate structure for probable cause inquiries incident to the issuance of a search warrant than does *Gates.* We are also of the opinion that

the *Aquilar–Spinelli* standard, or test, is more in keeping with the specific requirement of Art. 1, § 7 of the Tennessee Constitution that a search warrant not issue "without evidence of the fact committed." Consequently, we adopt the two prong standard voiced in *Aquilar* and *Spinelli* as a standard by which probable cause will be measured....

The Tennessee Supreme Court set aside Jacumin's conviction because the "basis for the informants' knowledge" was not set out in the affidavit, nor was there any basis to establish the informants' credibility. It did, however, hold that the subsequent observations of police officers, if detailed in the affidavit, might be sufficient corroboration. Similarly, our courts, in addition to the *Aquilar–Spinelli* standards, might consider any other facts, apart from the informant's tip, which might tend to support an investigatory stop.

In this case, however, the officers were apparently unable to substantiate the information provided by the informant. If the officers made any pre-stop inquiry as to the identity of the defendant or her reputation regarding the use or sale of illegal drugs, it does not appear in the record. We know of no attempt made by the officers to verify the credibility of their informant or the reliability of the information provided. The detention took place before the officers had an opportunity to corroborate Washington Road in Robertson County as the point of final destination. There was no significant period of surveillance before the deputy made the investigative stop. That the car was in fact registered in the name of Carla Coleman, innocent in and of itself, was the only independently acquired fact supporting the tip's veracity.

The defendant was apparently operating her vehicle within posted speed limits. Perhaps because the officer testified that he intended to stop the defendant anyway, the trial judge placed little value on Deputy Groves' testimony concerning the defendant's reactions to being followed by his cruiser; we see nothing in this record to hold otherwise. That the officer, after the stop, made no inquiry as to any suspected

impairment suggests that the trial court correctly ruled that the stop was based entirely upon the tip of the informant.

In *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Supreme Court upheld an investigatory stop which was based on a tip from an informant who was personally known to the officer and had given information on previous occasions.[2] The officer learned that the defendant, who had obviously been observed by the informer, was in a nearby vehicle, parked in a high crime area early in the morning, with a gun at his waist and heroin in his possession. Because the crime had already been committed and was, in fact, in progress at the time the tip was made, there was, at least by inference, some basis for the informer's knowledge. It was "immediately verifiable at the scene." *Id.* at 146, 92 S.Ct. at 1923. By way of contrast, the Court stated that this situation was a "stronger case than obtains in the case of an anonymous telephone tip." *Id.* at 146, 92 S.Ct. at 1923.

We do not, however, believe the information in this instance rises to the level approved in *Adams* at a time when *Aquilar–Spinelli* was the recognized guideline under the federal constitution. The record here suggests that Officer Henderson did not know the informant before the tip was provided. The tip was neither "immediately verifiable at the scene" nor did it possess, even by way of inference, the basis for the informer's knowledge. The only evidence reflecting upon the credibility of the informant is that he or she had a record of arrests. The *Adams* "indicia of reliability" necessary to support the investigatory

stop, when the basis for the intrusion is information supplied by such an informant, is not, in our view, present in this case. Because our Supreme Court has adopted, on state constitutional grounds, that older probable cause standard necessary to support the issuance of search warrants, we think the rationale is an appropriate comparative consideration in this instance.

In summary, we find that, while further independent corroboration may generally make up any deficiencies in an informant's tip, neither the informant's reliability nor his basis for knowledge was sufficiently substantiated in this case to establish the necessary "reasonable and articulable suspicion" required by our state constitution. In view of the rule adopted in *Jacumin*, it is apparent that this state has adopted stricter guidelines for search and seizure than those developed in the federal courts. Because the stop in this case was invalid, the consent to search provided by the defendant must also fail. *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); *Hughes*, 588 S.W.2d at 308.

The judgment of the trial court is, therefore, affirmed.

DUNCAN and DAUGHTREY, JJ., concur.

---

**2.** This is a lesser standard than probable cause because the information provided in *Adams* was not required to be accurate. *Adams,* 407 U.S. at

145, 92 S.Ct. at 1923. *See Search and Seizure,* § 9.3(e), at 477.