STATE of Tennessee, Appellee,

v.

Ricky L. KELLY, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 25, 1996.

Thomas R. Meeks, Clarksville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Karen M. Yacuzzo, Assistant Attorney General, Nashville, John Carney, District Attorney General, William Cloud, Assistant District Attorney General, Clarksville, for Appellee.

## OPINION

WELLES, Judge.

This is a direct appeal from a guilty plea pursuant to Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure. In his plea agreement, the Defendant pleaded guilty to possession of cocaine for resale, a Class B Felony. He expressly reserved a certified question of law that is dispositive of the case. The certified question originates from the trial court's denial of a motion to suppress evidence obtained from a search of the Defendant's automobile. We affirm the ruling of the trial court.

On February 23, 1995, Officer Nichols, with the Special Operations Unit of the Clarksville Police Department, received several anonymous telephone calls pertaining to the Defendant. The same person made three separate calls to the police. During the first call, the caller stated that the Defendant, Ricky Kelly, and a black male passenger would be leaving Clarksville, Tennessee and driving towards Dickson, Tennessee in a 1980's model gray Cadillac. The caller told the officer that the automobile contained drugs and directed the officer to Riverside Drive, in Clarksville. A few minutes after Officer Nichols left, there was another call, which the secretary answered, but the caller insisted on speaking only to Nichols.

Officer Nichols was notified and returned to the station. He received a third call from the same person, who stated that Ricky Kelly was "leaving now" and going towards Dickson. Officer Nichols returned to Riverside Drive along with two officers in another police cruiser. Shortly thereafter, they observed a gray vehicle traveling on Riverside Drive. The officers observed the vehicle until it turned onto highway 48/13, towards Dickson.

Officer Nichols knew the Defendant, Ricky Kelly, prior to receiving the anonymous call. He was aware that the Defendant had a history of arrests in Clarksville, that he had a reputation for dealing drugs there, and that there was a pending criminal case from a drug arrest in Dickson.

Sergeants Atkins and Hagewood were in the cruiser closer to the Defendant and observed a four-door Oldsmobile or Cadillac with tinted windows. The number of persons in the vehicle was unclear. At the direction of Officer Nichols, who was following behind them in traffic, the officers used their emergency lights to stop the vehicle. The Defendant pulled the car into a service station. Apparently, there were other trucks and automobiles between the officers and the Defendant's vehicle. Another automobile also was attempting to pull over, but Sergeant Atkins motioned to the Defendant to pull over. The Defendant contends that the officer had his service revolver in his hand when he waved the vehicle off the road. The officer testified that from his recollection, he did not display the gun.

The Defendant stepped out of his vehicle and Sergeant Atkins asked for his driver's license. The Defendant asked why he had been stopped, and the officer said they were investigating a drug complaint and asked whether he had any weapons or drugs in the vehicle. Sergeant Atkins then asked whether he could search the Defendant and the automobile, and the Defendant consented to the searches. The officer also obtained consent from the other person in the vehicle, the owner of the car. The Defendant was placed in a search position, patted down, but no contraband was discovered. Officer Nichols arrived and participated in the search of the vehicle. He discovered 67 rocks of crack cocaine in a plastic bag stuffed under the seat.

The Defendant was indicted for one count of possession of cocaine with intent to sell and one count of possession of cocaine with intent to deliver.[1] Pursuant to his plea agreement entered on November 17, 1995, the second count of the indictment was dismissed and this certified question was reserved for appellate review.

The Defendant argues that the initial stop of the the automobile was a seizure violating the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution. He contends that the stop was a warrantless seizure based on exigent circumstances requiring a showing of probable cause. Information provided by the anonymous tip and further corroboration by the investigating officers did not provide probable cause. Therefore, the Defendant argues that the subsequent search of his automobile and the cocaine seized was obtained illegally and that the evidence should be suppressed.

The State does not argue that stopping the Defendant's automobile was not a seizure. It counters that the initial restraint of the Defendant was an investigatory stop of the vehicle, not rising to the level of a full-blown arrest. The State asserts that reasonable suspicion is the proper standard to evaluate the circumstances leading the police to the interaction with the Defendant.

■ First, the Defendant argues that the police officers "seized" him when they turned on their emergency lights and motioned for him to pull off the road. According to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), when a person is approached by a police officer and is restrained from leaving, this constitutes a seizure. 392 U.S. at 1, 88 S.Ct. at 1877. Our supreme court has applied *Terry* when an automobile is stopped by police. *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn.1993). "When an officer turns on his blue lights, he or she has clearly initiated a stop." *Id.* We agree that the police seized the Defendant.

■ Although less than a full-blown arrest, a *Terry* stop is subject to the constitutional protection of the Fourth Amendment

against "unreasonable searches and seizures." *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879. Interactions between the police and the public that are seizures but not arrests, are judged by their reasonableness, rather than by a showing of probable cause. *Id.* The reasonableness of the intrusion is "judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." *Pulley*, 863 S.W.2d at 30 (*citing Brown v. Texas*, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)).

■ Reasonable suspicion must be based on specific and articulable facts, that a criminal offense has been or is about to be committed. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880; *Pulley*, 863 S.W.2d at 30; *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn.1992); *State v. Seaton*, 914 S.W.2d 129, 131 (Tenn. Crim.App.1995). Establishing the basis for reasonable suspicion is not limited to the personal observations of the investigating officer, and has been extended to include information supplied by another person. *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); *Pulley*, 863 S.W.2d at 31.

■ However, when information is provided by another source, this raises heightened concerns about the reliability of the information, such as the possibility of "false reports, through police fabrication or from vindictive or unreliable informants." *Pulley*, 863 S.W.2d at 31. The Defendant first challenges the stop on the ground that Officer Nichols directed Sergeant Atkins to stop the Defendant's vehicle, and because Atkins did not know Ricky Kelly, this was unreasonable. When the source of the information provided is a police officer, it is presumed to be credible. *Seaton*, 914 S.W.2d at 132. An officer without knowledge of the details may conduct an investigative stop of a vehicle upon the request of another officer. *Id.* Sergeant Atkins made the stop reasonably, based on Officer Nichols' request.

Beyond this, the Defendant asserts that the anonymous tip did not provide sufficient

1. Tenn.Code Ann. § 39–17–417(a)(4).

reliability to support probable cause to stop the automobile. As we have stated, an investigative stop requires only a showing of reasonable suspicion that does not rise to the level of probable cause. For showings of probable cause based on an informant's tip, our supreme court has followed the former federal two-pronged test that requires proof of the informant's basis of knowledge and credibility. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *State v. Jacumin,* 778 S.W.2d 430, 436 (Tenn.1989). The *Aguilar–Spinelli/Jacumin* test has been used as a guide in assessing the reliability of an informant's tip supporting an investigative stop of an automobile. *Pulley,* 863 S.W.2d at 31; *State v. Coleman,* 791 S.W.2d 504, 505 (Tenn.Crim.App.1989), *perm. to appeal denied, id.* (Tenn.1990).

▮▮▮ Although it is difficult to assess the basis of knowledge or credibility of an anonymous caller, independent corroboration by police officers can cure deficiencies in showing the reliability of the tip. *Pulley,* 863 S.W.2d at 31–32; *Coleman,* 791 S.W.2d at 507. Reasonable suspicion requires a lower level of proof, allowing for tips that are less reliable. *Pulley,* 863 S.W.2d at 32. "The ultimate question when confronted with an anonymous caller, then, is how much corroboration is necessary to show sufficient credibility and basis of knowledge." *Id.*

> It is difficult to define with precision the quantity of corroboration necessary to demonstrate the informant's veracity. Certainly, more than the corroboration of a few minor elements of the story is necessary, especially if those elements involve non-suspect behavior. It is equally certain, though, that the police need not corroborate every detail of an informant's report to establish sufficient evidence of his veracity.

*State v. Moon,* 841 S.W.2d 336, 341 (Tenn. Crim.App.1992) (*quoting United States v. Bush,* 647 F.2d 357, 363 (3rd Cir.1981)).

In *Coleman,* a police officer received a tip from a confidential informant without a history of proven reliability. On the day before and on the same day as the stop, the infor-

mant relayed that a woman named Carla at a certain time would be driving on a certain road, in a particular type of automobile, to a certain destination, with several pounds of marijuana in the car. After a period of observation, the vehicle was spotted as the informant predicted. The officer did a license check of the vehicle, which named Carla Coleman as the owner, then made the stop. *Coleman,* 791 S.W.2d at 504–05.

The *Coleman* court held that the police did not sufficiently corroborate the informant's tip to support a constitutionally permissible stop. *Id.* at 507. The court suggested that had "the officers made any pre-stop inquiry as to the identity of the defendant or her reputation regarding the use or sale of illegal drugs," such independent information could cure "deficiencies in [the] informant's tip." *Id.* at 506–07. *See also State v. James E. Sanders,* No. CCA01C01–9502–CC–00037, Marshall County, slip op. at 9 (Tenn.Crim. App., Nashville, Jan. 17, 1996).

*Pulley* addressed the reliability issue for an anonymous tip that initiated an investigative stop of an automobile. *Pulley,* 863 S.W.2d at 32. The police received an anonymous call, reporting that a man, known to the police officer, was driving a particular automobile in a certain trailer park and was threatening to shoot someone. While en route to the designated location, the officer received another urgent call. The Defendant was found in his vehicle and was stopped, an eighth of a mile from the trailer park. *Id.* at 29–30.

▮▮▮ Using the *Jacumin* factors, the court found the anonymous tip to be sufficiently reliable. Considering the basis of knowledge, if the informant reports the incident "at or near the time of its occurrence," it is likely that the person has first-hand knowledge. *Id.* at 32. Yet, the credibility of an anonymous informant is more difficult to demonstrate. Corroboration of the informant's statements can show the credibility of information that inherently cannot be verified because the caller is anonymous. This may include the severity of the suspected behavior, direct police observation of the predicted events, and a pre-stop inquiry into the

identity and reputation of the suspect. *See Pulley,* 863 S.W.2d at 33; *State v. Marshall,* 870 S.W.2d 532, 539 (Tenn.Crim.App.), *perm. to appeal denied, id.* (Tenn.1993); *Coleman,* 791 S.W.2d at 506.

■ We turn now to the primary issue in the case *sub judice;* whether there was sufficient corroboration of the anonymous tip to support a reasonable suspicion of illegal activity. The Clarksville Police Department received three anonymous phone calls within fifteen or twenty minutes of each other. The caller described with particularity that the Defendant, Ricky Kelly, was "leaving now" from Riverside Drive in Clarksville and heading towards Dickson. The caller also described the vehicle as a gray, 1980's model Cadillac with two occupants. Although the informant did not reveal how the information was known, it was contemporaneous with the activity observed by the police officers. This immediacy is sufficient to satisfy the basis of knowledge prong.

Although the credibility of the caller could not be directly verified, there was independent corroboration of the call. Prior to initiating the stop, the police officers knew the Defendant. He had numerous prior arrests in Clarksville, including assault and driving on a revoked license. They were also aware of a pending prosecution in Dickson for selling drugs. The Defendant also had a reputation in the community as a drug dealer. It is such background information about the Defendant that the *Coleman* court had criticized as lacking in that case. *See Coleman,* 791 S.W.2d at 506. *See also Marshall,* 870 S.W.2d at 540. In addition to generally knowing "the defendant or [his] reputation regarding the use or sale of illegal drugs," *Coleman,* 791 S.W.2d at 506, the officers were aware of a specific criminal proceeding against Ricky Kelly for a drug offense committed in a neighboring county.

■ At the scene, the police officers observed a gray 1980's Cadillac traveling on Riverside Drive and turning on highway 48/13 towards Dickson. There were two occupants, one of whom Officer Nichols recognized as Ricky Kelly. The other was a black male, as the caller described. The activity observed need not be incriminating to prove

reliability. *Marshall,* 870 S.W.2d at 539. In *Coleman,* similar circumstances were not sufficient to support a reasonable suspicion. Yet here, the details of the call were corroborated by observation and the police knew that the Defendant was involved in selling drugs. *See State v. Johnson,* 661 S.W.2d 854, 858–59 (Tenn.1983). An otherwise innocent appearing drive towards Dickson became more suspicious, considering the Defendant had been prosecuted for selling drugs there.

> What becomes apparent from reviewing the authorities cited in *Moon* is that using such terms as "incriminating," "suspicious," "innocent," or "non-suspect" is only of value in the context of the facts and circumstances of any particular case. That is, activity which may be viewed as innocent in one case may be highly suspicious or incriminating in another.

*Marshall,* 870 S.W.2d at 540.

The facts and circumstances of the case determine whether the stop was reasonable. *Pulley,* 863 S.W.2d at 34. Although the reasonableness of the stop in *Pulley* was bolstered by the presence of a weapon, investigative stops for possible criminal activity other than those involving weapons were not specifically ruled out. *Id.* at 33. In assessing the stop using the three factors in *Pulley,* the public interest served was the interdiction of a drug sale. Although this is not as dangerous as a weapons offense, a brief stop of the Defendant's vehicle was a minor intrusion, particularly considering the immediate and urgent nature of the call. *See Id.* Knowledge of the Defendant's prior history of selling drugs and the corroboration of details given by the informant provided sufficient reliability to justify the degree of action taken by the officers. Officer Nichols conducted a sufficient "pre-stop" inquiry about the Defendant, considering the time-frame in which the events occurred. In this context a reasonable officer should not be expected to "ignore his well-founded doubts" and completely disregard the call. *Pulley,* 863 S.W.2d at 33 (*quoting United States v. McClinnhan,* 660 F.2d 500, 503 (D.C.Cir. 1981)); *see Terry,* 392 U.S. at 23, 88 S.Ct. at 1881. From the information given by the

anonymous caller, the subsequent corroboration of each item of information enumerated by the informant and the prior knowledge of the Defendant's drug involvement in Clarksville and Dickson, we conclude that the police officers had a reasonable suspicion that would justify the stop in this case.

The Defendant also contends that the searches conducted by the officers were unlawful. He contends that the searches were based on the exigent circumstances exception to the warrant requirement, and because there was no probable cause to support the searches, they were invalid. The Defendant cites *State v. Leveye,* 796 S.W.2d 948 (Tenn. 1990), to support his argument that the exigent circumstances exception requires probable cause. We generally agree with that contention, but we find the exigent circumstances exception inapplicable to this case.

The Defendant was requested and gave his oral consent to search his person and the automobile. The record clearly shows, by the Defendant's own testimony, that he consented to the search of his person. He contends that he did not give consent to search the vehicle because he was not the owner, but the evidence shows that both he and the passenger in the car were asked to consent to the search. The evidence further shows that the passenger, who was the owner of the vehicle, gave his consent to search the automobile. The officers did not have to rely on a showing of probable cause to search the vehicle since consent was given. Also, because the initial stop of the vehicle was lawful, the subsequent consent to search was obtained validly. *See Johnson,* 661 S.W.2d at 859.

We conclude that the police officers had a reasonable suspicion that the Defendant was involved in a drug transaction that would justify a brief investigatory stop of the Defendant and his vehicle. The trial court did not err in denying the Defendant's motion to suppress the cocaine discovered in the search. We affirm the judgment of the trial court.

PEAY and TIPTON, JJ., concur.