## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

## FEBRUARY, 1998 SESSION

**FILED**

May 21, 1998

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | No. 01C01-9705-CC-00191 |
| | ) | |
| Appellee | ) | |
| | ) | Robertson County |
| vs. | ) | |
| | ) | Honorable Robert W. Wedemeyer, Judge |
| **CLIFFORD E. COX,** | ) | |
| | ) | (DUI, Habitual Motor Vehicle Offender) |
| Appellant. | ) | |

FOR THE APPELLANT:

MICHAEL R. JONES
Public Defender
110 Public Square
Springfield, TN 37172

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

LISA A. NAYLOR
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243-0493

JOHN WESLEY CARNEY, JR.
District Attorney General
204 Franklin St., Suite 200
Clarksville, TN 37040

DENT MORRISS
Assistant District Attorney General
500 S. Main
Springfield, TN 37172

OPINION FILED: _____


**AFFIRMED, AS MODIFIED**


CURWOOD WITT
JUDGE

**OPINION**

The defendant, Clifford E. Cox, was convicted in a jury trial in the Robertson County Circuit Court of driving under the influence, third offense, and violation of the Habitual Motor Vehicle Offender Act. See Tenn. Code Ann. § 55-10-613, 616 (1993). For the DUI, the trial court sentenced Cox to serve 180 days in confinement with the balance of the eleven months and twenty-nine days to be served in Community Corrections. As a Range I, standard offender, he was sentenced to two years for violating the Habitual Motor Vehicle Offender Act, a Class E felony, and was ordered to serve the entire sentence in Community Corrections.[1]

In this appeal pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure, the defendant contends that the initial stop of his vehicle was not supported by sufficient specific and articulable facts to give rise to a reasonable suspicion and that consecutive sentences are excessive. We disagree with the defendant's claims and affirm the trial court.

At the hearing on the defendant's motion to suppress, the trial court heard the testimony of Officer Mark Sletto of the Springfield Police Department. Sletto testified that just after eleven p.m. on May 28, 1995, he was dispatched to investigate a report that the driver of an older model gold car with a white top was waving a gun around at Fox's Car Wash. An anonymous telephone call had been placed from the fire department located across the street from the car wash. As Sletto drove by, an automobile which met the informant's description was pulling out of the car wash. The car turned right and slowly headed north on a narrow

---

[1] The trial judge suspended fines of $1,100 and $1,000. Although the $1,100 DUI fine is the mandatory minimum fine imposed by Tennessee Code Annotated section 55-10-403(a)(1), subsection (b)(1) of that Code section allows the trial court to find the defendant indigent, based upon the applicability of the criteria set forth in Code section 40-14-402(b), and to reduce or suspend the fine.

street. The officer followed closely for about half a block and then turned on his blue lights. The suspect did not stop immediately but continued to drive at less than ten miles per hour. At the second corner, he coasted though a stop sign and, after turning left, finally pulled over and came to a stop. The defendant immediately climbed out, and the officer, who had taken cover behind his car door, shouted at him three or four times before the defendant reentered his vehicle. When a second patrol car arrived, the two officers approached and "got him out of his car." According to Officer Sletto, the defendant smelled of alcohol, had blood shot eyes, and was unstable on his feet. The defendant refused to do any field sobriety tests but consented to a determination of his blood alcohol level.[2] With the defendant's consent, the officers searched the automobile. They found neither alcoholic beverages nor any weapons. When the officers ran a computer check, they discovered that the defendant had been convicted under the habitual offender law and that he was driving despite having a revoked license. Officer Sletto testified that the defendant had not committed any traffic violation that would have warranted a stop during the short drive from the car wash to the place where he parked. However, the officer stated that the defendant's slow driving was sufficiently suspicious that he would have pulled him over even if he had not been investigating the firearm report.

Based on this evidence, the trial judge found that a car traveling less than ten miles an hour at that time of night was extremely suspicious. The judge reasoned that patrol officers were trained that very slow driving may indicate that a driver is under the influence.[3] The trial court made no findings concerning the anonymous telephone call and accorded it no weight in its denial of the defendant's motion to suppress.

---

[2] According to the test results, his blood contained .21 grams percent of alcohol.

[3] The judge candidly admitted that the officer had not so testified and that the record contained no information about the officer's training.

3

On appeal, the defendant argues that the police did not have sufficient articulable facts to justify a stop under Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968). The state, on the other hand, argues that the anonymous tip, the extremely slow rate of speed, and the failure to stop completely at the stop sign are sufficient to create a reasonable suspicion that the defendant had committed an offense. We must determine whether the police officer behaved reasonably under the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution by briefly stopping the defendant to investigate a report that the operator of a certain vehicle was waving a firearm around in a public place. See State v. Pulley, 863 S.W.2d 29 (Tenn. 1993).

In reviewing suppression issues, the proper standard is the preponderance of the evidence standard. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge, and this court must uphold a trial court's findings of fact unless the evidence in the record preponderates against them. Id. See also Tenn. R. App. P. 13(d). However, the application of the law to the facts is a question which an appellate court reviews de novo. Beare Co. v. Tennessee Dept. of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993). We consider the issue in this appeal with these standards in mind.

An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution. See Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); Pulley, 863 S.W.2d at 30. Probable cause is not required for an investigative stop. Terry, 392 U.S. at 21, 88 S. Ct. at 1880; Hughes v. State, 588 S.W.2d 296, 305 (Tenn. 1979). In Terry, the Court held that a "stop and frisk" is constitutionally permissible

> where a police officer observes unusual conduct which
> leads him reasonably to conclude in light of his

4

experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous. . . .

392 U.S. at 30, 88 S. Ct. at 1884.  Generally, the police are entitled to stop a car briefly for investigative purposes if they have a reasonable suspicion, based upon specific and articulable facts, that an offense is being or is about to be committed. See Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401 (1979); State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992).  A court must consider the totality of the circumstances when evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts.  State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997) (citations omitted).

The Fourth Amendment permits an investigative stop based on the corroborated tip of an informant in circumstances involving an immediate threat of danger.  State v. Pulley, 863 S.W.2d 29, 31 (Tenn. 1993).  When a known informer provides information that is "immediately verifiable at the scene," the information may be sufficiently reliable to justify a forcible stop.  Adams v. Williams, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924 (1972).  A stop based on an anonymous tip, however, gives rise to the danger of false reports either through police fabrication or from vindictive or unreliable sources.  Id.  When assessing the validity of an investigative stop based on information from an unknown source, the factors set forth in State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989), are useful.  Pulley, 863 S.W.2d at 31-32; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989).[4]  Jacumin requires a showing of both the informant's credibility and his or her basis of knowledge. 778 S.W.2d at 436.

To assess either the basis of knowledge or the credibility of an anonymous caller is frequently difficult.  Reasonable suspicion, however, requires a lower level of proof than probable cause and allows for tips that are less reliable.

---

[4]      In Jacumin, our supreme court adopted the two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1960).

State v. Simpson, --- S.W.2d ---, slip op. at 13, No. 02S01-9702-CC-0010 (Tenn. Feb. 23, 1998). A police officer's independent corroboration can cure the deficiencies in showing the reliability of the tip. Pulley, 863 S.W.2d at 32. The ultimate question is how much corroboration is necessary to show sufficient credibility and basis of knowledge. Id. at 33; State v. Kelly, 948 S.W.2d 757, 761 (Tenn. Crim. App. 1996); Coleman, 791 S.W.2d at 507. To determine whether an officer has sufficiently corroborated an anonymous call to make a Terry stop, we consider (1) whether the officer can determine the informant's basis of knowledge, (2) whether the details of the tip sufficiently support the informant's credibility, and (3) whether the content of the tip reveals a level of danger that justifies a brief investigative stop. Pulley, 863 S.W.2d at 32-33.

Immediate, first-hand observations of a crime are often assumed to be reliable. Id. at 32 (citations omitted). An anonymous call that is contemporaneous or nearly contemporaneous with the event reported implies an eyewitness basis of knowledge. Id.; see also Simpson, --- S.W.2d at ---, slip op. at 15. In this instance, the officer had good reason to believe that the caller had first-hand knowledge of the event. The call was made from the fire station across the street from the car wash. The officer testified that a room constantly occupied by fire department personnel overlooked the area. Officer Sletto received the call at 11:02 p.m., and when he reached the corner near the car wash two or three minutes later, a vehicle meeting the description was just exiting from the driveway. On these facts, the officer could reasonably assume that the informant was an eyewitness.

The credibility of the anonymous caller, however, was unknown. The corroboration of several details are necessary to support the informant's credibility. Pulley, 863 S.W.2d at 32. In this instance, however, the tip contained few details. For example, the officer did not have even a rudimentary description of the alleged perpetrator. In fact, he did not know whether the driver was a male or a female. The information relayed to the officer indicated only that the driver of an older model

6

gold car with a white top had potentially violated Tennessee Code Annotated section 39-17-1307(a)(2).[5] When the officer arrived at the location specified by the caller, he found an older model gold automobile with a white top leaving the car wash. Although some of the information in the tip was immediately verifiable at the scene, the details were scanty. Under many circumstances, therefore, the officer would lack a reasonable suspicion that criminal activity had taken place. See Pulley, 863 S.W.2d at 32. However, the defendant's unusual conduct after the officer arrived on the scene served to increase his suspicion that the defendant had violated or intended to violate the law. See Terry v. Ohio, 392 U.S. at 30, 88 S. Ct. at 1884. When the officer observed the automobile creep slowly down the street, he had reason for increased suspicion.

Moreover, this court must also consider the content of the tip in determining the reasonableness of the stop. The seriousness of the criminal threat is an important factor, and the level of danger that the tip reveals is crucial. Pulley, 863 S.W.2d at 34. In Pulley, the court concluded that "[t]he consequences of a police officer's failure to investigate a tip must be considered when assessing the reasonableness of a stop." Id. Given the first-hand nature of the call, Officer Sletto was justified in assuming that the driver of the vehicle was armed and potentially dangerous to others and to himself.[6]

The question of reasonable suspicion is judged by considering the

---

[5]   The statute makes it a Class C misdemeanor to carry a firearm with the intent to go armed in a place open to the public. Tenn. Code Ann. § 39-17-1307(a)(2) (1997).

[6]   In our analysis, we have not considered the defendant's failure to come to a complete stop at the stop sign. The officer testified that he activated his blue emergency lights a block and a half before the defendant coasted

through the stop sign. When an officer turns on his blue lights, he or she has clearly initiated a seizure. State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Kelly, 948 S.W.2d 757, 760 (Tenn. Crim. App. 1996); see also State v. Yeargan, 958 S.W.2d 626, 630 (Tenn. 1997). Only those facts available to the officer at the time of the seizure are relevant. State v. Donald Heiskel Ferrell, No. 03C01-9409-CR-00354, slip op. at 7 (Tenn. Crim. App., Knoxville, June 13, 1995). In this case, the seizure for constitutional purposes was complete before the traffic violation occurred.

7

gravity of public concern, the nature and scope of the intrusion, and the objective facts upon which the officer relied in view of the officer's knowledge and experience. Pulley, 863 S.W.2d at 34; see also State v, Watkins, 827 S.W.2d 293, 294 (Tenn. 1992); State v. David Price, No. 02C01-9610-CC-00356, slip op. at 7 (Tenn. Crim. App., Jackson, Aug. 25, 1997), pet. perm. app. filed (Tenn. Oct. 24, 1997). In this instance, the public interest served was the prevention of violent crime. The officer intended only a temporary stop of the defendant's car. The scope of the intrusion into the defendant's privacy was minor. Moreover, the indicia of reliability were sufficient to warrant a brief investigative stop. The timeliness of the call indicated an eye-witness basis for the knowledge, and the immediate verification of the admittedly few details along with the defendant's unusual conduct provided some basis to believe that the informant was credible. The reliability of this call would certainly not establish probable cause or even reasonable suspicion under other circumstances. However, given the threat of violence, we conclude that the officer had sufficient "specific and articulable facts" to justify a brief investigatory stop in this case. The trial court did not err in denying the defendant's motion to suppress.

Finally, the defendant raises two sentencing issues. He argues that the trial court erred (1) by sentencing him to serve 180 days day-for-day of his eleven month and twenty-nine day sentence for driving under the influence and (2) by ordering that the two-year felony sentence be served consecutively to the misdemeanor sentence.[7]

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d)(1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and

---

[7] The trial court ordered that the defendant serve the two-year sentence and the balance of the misdemeanor sentence in Community Corrections.

all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of demonstrating that the sentence is improper. Id. In the event the record fails to demonstrate the appropriate consideration by the trial court, appellate review of the sentence is purely de novo. Id. If our review reflects that the trial court properly considered all relevant factors and the record adequately supports its findings of fact, this court must affirm the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In this instance, the defendant has failed to brief the issue regarding the 180 days of incarceration. This court will treat issues that are unsupported by argument, citation to authorities, or appropriate references to the record as waived. Tenn. Ct. Crim. App. R. 10(b).[8] We turn, therefore, to the question of consecutive sentencing.

Consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the criteria listed in Tennessee Code Annotated section 40-35-115(b) exist. In considering consecutive sentences, the trial court must insure that the aggregate sentence imposed is the least severe measure necessary to protect the public from a defendant's future criminal conduct and should bear some relationship to a defendant's potential for rehabilitation. State v. Desirey, 909 S.W.2d 20, 33 (Tenn. Crim. App. 1995).

---

[8] Even if this issue were properly before this court, the defendant is entitled to no relief. The mandatory minimum sentence for a third offense DUI is not less than 120 days of confinement in the county jail or workhouse. Tenn. Code Ann. § 55-10-403(a)(1)( Supp. 1996). Unlike a felon, the misdemeanant is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). In determining the percentage of the sentence to be served, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Tenn. Code Ann. § 40-35-302(d); State v. Palmer, 902 S.W.2d 391, 393-94 (Tenn. 1995); State v. Gilboy, 857 S.W.2d 884, 888-889 (Tenn. Crim. App. 1993). The trial court found that the defendant had a previous history of criminal convictions and criminal behavior and enhanced his sentence by sixty days. The record supports the sentence imposed for the DUI conviction.

The trial court found that the defendant is an offender whose record of criminal activity is extensive. Tenn. Code Ann. § 40-35-115(b)(2) (1997). The evidence presented at the sentencing hearing supports this finding. The presentence report indicates that the defendant has two prior DUIs, a burglary conviction, and convictions for driving after being adjudicated an habitual traffic offender and for driving on a revoked license. The defendant was forty-nine years old when he committed these offenses. He has a long history of alcoholism. He has persisted in defying the law by continuing to drive an automobile even though he has lost that privilege. The time spent in confinement coupled with the two and a half years in Community Corrections will provide the defendant with the opportunity to deal with his addiction to alcohol and impress upon him the necessity of obeying the law. The defendant has not met his burden of showing that the trial court erred in ordering his sentences to be served consecutively.

The transcript of the sentencing hearing reveals that the trial court ordered the defendant to serve the sentences consecutively. The judgment forms, however, do not reflect either concurrent or consecutive sentencing. When there is a conflict between the court minutes or judgment and the transcript, the transcript controls. State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). Therefore, the trial court's judgment form shall be modified by this court's judgment to reflect the consecutive running of the sentences.

For the reasons stated above, the judgment of the trial court is affirmed, as modified.

_____
CURWOOD WITT, Judge

CONCUR:

_____
GARY R. WADE, Judge

10

_____
WILLIAM M. BARKER, Judge