# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
June 13, 2001 Session

## TIMOTHY RATHERS v. STATE OF TENNESSEE

**Appeal as of Right from the Criminal Court for Shelby County**
**No. P-21632     Carolyn Wade Blackett, Judge**

---

**No. W2000-02177-CCA-R3-PC - Filed January 18, 2002**

---

The petitioner, Timothy Rathers, was convicted by a jury in the Shelby County Criminal Court of one count of possessing less than ten pounds of marijuana with intent to deliver and one count of possessing over .5 gram of cocaine with intent to deliver. The trial court sentenced the petitioner to an effective sentence of ten years incarceration in the Tennessee Department of Correction. Subsequently, the petitioner filed a petition for post-conviction relief alleging that he received ineffective assistance of counsel at trial. The post-conviction court denied the petition, finding that the petitioner had not met his burden of demonstrating counsel's ineffectiveness. The petitioner appeals. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOE G. RILEY, J., and CORNELIA CLARK, SP.J., joined.

Robert Little and John Finklea, Memphis, Tennessee, for the appellant, Timothy Rathers.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephanie Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On direct appeal, this court summarized the facts underlying the petitioner's convictions as follows:

> The testimony at trial revealed that on July 19, 1996, Sergeant Ernest Long of the Shelby County Sheriff's Department received information from a confidential informant that the defendant was conducting drug sales from his vehicle. The informant described the defendant's vehicle and gave a specific street on which the car would be found.

Upon traveling to the specified location, Sergeant Long observed a car matching the description of the defendant's vehicle. A license plate check confirmed that it belonged to the defendant. A passenger, later identified as Irish Banks, was also in the vehicle. Long saw a male subject he believed to be the defendant walking across the street to a pay telephone.

Once Sergeant Long had positioned himself for continued surveillance of the defendant, he radioed for assistance and requested that a narcotics dog be brought to the scene. When the other officers arrived, they approached the defendant at the telephone booth, identified themselves and asked permission to search his vehicle. When the defendant refused to consent to such a search, he was detained for approximately ten minutes to await the arrival of the narcotics dog.

When the narcotics dog was brought to the defendant's vehicle, it alerted on the trunk of the vehicle. The officers obtained the keys from the defendant and opened the trunk where the dog alerted on a gym bag. Upon opening the gym bag, Detectives Tarwater and Beasley discovered a bag containing what was later confirmed to be 456 grams of marijuana and two bags containing what was later confirmed to be 52.62 grams of crack cocaine. A set of postal scales was also discovered in the trunk of the defendant's vehicle. Sergeant Long testified that a .1 to .2 gram rock of cocaine would sell for $20 and the street value of the marijuana would have been $900 to $1300.

The defendant was arrested and taken to the police department where he was interviewed by Scott Campbell of the Shelby County Sheriff's Department. In his statement, captured on video, the defendant admitted that the "narcotics that were found belonged to me." However, he insisted that he had been set up because he did not have to take the drugs and deliver them. According to the defendant's statement, someone called him and asked that these specific amounts of narcotics be delivered to him.

Irish Banks, the defendant's girlfriend, testified on behalf of the defendant. Banks testified that she was a passenger in the defendant's vehicle on the day of the drug search. Ms. Banks said that she had not seen the defendant open the trunk that day. Further, she testified that the defendant's brother had driven the car on occasion.

State v. Timothy Rathers, No. 02C01-9710-CR-00392, 1998 WL 605095, at *1 (Tenn. Crim. App. at Jackson, September 14, 1998).

Again, the petitioner was convicted of one count of possessing marijuana with intent to deliver and one count of possessing cocaine with intent to deliver and received a total effective sentence of ten years. Subsequently, the petitioner filed a petition for post-conviction relief alleging the ineffective assistance of his trial counsel. At the post-conviction hearing, the only proof presented was the transcript of the petitioner's trial and the testimony of the petitioner. The State presented no proof, notably failing to call the petitioner's trial counsel. After the hearing, the post-conviction court found that the petitioner had not demonstrated the ineffective assistance of counsel. The petitioner now appeals.

## I. Analysis

The petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). This court has observed that "[e]vidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Generally, witness credibility and the weight and value to be accorded a witness' testimony must be determined by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Accordingly, the factual findings made by the post-conviction court at a hearing after observing witnesses testify and considering conflicting testimony will be given the weight of a jury verdict. Bratton v. State, 477 S.W.2d 754, 756 (Tenn. Crim. App. 1971).

In analyzing claims of ineffective assistance of counsel, this court will review the post-conviction court's findings of fact de novo with a presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). In other words, we will defer to the post-conviction court's factual findings unless the evidence preponderates otherwise. Id. Regardless, we will review the court's conclusions of law purely de novo. Id.

In order to obtain relief because of ineffective assistance of counsel, the petitioner must prove that "counsel's performance was deficient" and "the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). The performance of counsel is deficient if such performance falls outside the range of competence required of an attorney in a criminal case. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, we note that to demonstrate prejudice due to the deficiency, the petitioner must prove "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Campbell v. State, 904 S.W.2d 594, 597 (Tenn. 1995) (quoting Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994)). A reasonable probability is one that is "sufficient to undermine confidence in the outcome" of the proceeding. Campbell, 904 S.W.2d at 597. The petitioner bears the burden of satisfying both prongs of the test of ineffective assistance; thus, if the petitioner has failed to prove prejudice, this court need not address whether the attorney's performance has been deficient. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

As noted earlier, the only evidence presented at the post-conviction hearing was the testimony of the petitioner and the transcript of the petitioner's trial. The petitioner testified that he met with counsel "[o]nce maybe twice at the most," and, during those meetings, he related the

circumstances surrounding his arrest. At the hearing, the following colloquy occurred during the direct examination of the petitioner:

> Q: Okay. Did you discuss your trial strategy?
>
> A: Just a little bit.
>
> Q: All right. Did you discuss a motion to suppress?
>
> A: No.

The petitioner conceded that his trial strategy was that the police "had the wrong guy."

The petitioner first claims that his trial counsel was ineffective in failing to file a motion to suppress the evidence discovered by the police during a warrantless search of his vehicle. Initially, we note that the State did not call the petitioner's trial counsel to testify at the post-conviction hearing regarding the reasons for this failure. "We have observed on many occasions that original counsel, when available,[1] should always testify in a post-conviction proceeding when there is an allegation that he was ineffective." State v. Hopson, 589 S.W.2d 952, 954 (Tenn. Crim. App. 1979); see also State v. Craven, 656 S.W.2d 872, 873 (Tenn. Crim. App. 1982) (stating "[w]hen counsel is challenged as ineffective and a post-conviction hearing is held, the state should present the attacked counsel to show what occurred"). This court again recently recognized that "when counsel is challenged as ineffective, then the State should call the attacked counsel as a witness at the post-conviction hearing." A. D. Barker v. State, No. 03C01-9604-CC-00177, 1999 WL 118640, at *3 (Tenn. Crim. App. at Knoxville, March 9, 1999) (citing Garrett v. State, 530 S.W.2d 98, 99 (Tenn. Crim. App. 1975)).

Based on the record before us, we can only speculate as to why counsel failed to file a motion to suppress. The petitioner admitted that his trial strategy was to show that the drugs belonged to his brother. After reviewing the trial transcript and the evidence presented at the post-conviction hearing, we are unable to conclude that counsel was deficient. In any event, we conclude that the petitioner has failed to prove that he was prejudiced by counsel's failure to file a motion to suppress.

The root of the petitioner's argument is that the police lacked reasonable suspicion as a result of the informant's tip to justify the search of his vehicle. Therefore, because there was no justification for the search, his trial counsel was ineffective for failing to file a motion to suppress the evidence, namely the drugs and the scales, which was discovered pursuant to the search. In its findings of fact, the post-conviction court stated:

> Police found approximately 456 grams of marijuana and 52.62 grams
> of crack cocaine . . . in the trunk of Petitioner's vehicle. Arguably,
> these were not the fruits of an illegal search. The cocaine and

---

[1] There is no indication in the record whether petitioner's trial counsel was available to testify at the post-conviction hearing.

marijuana were seized incident to the narcotics dog's alerting on the trunk of the vehicle and the officers' subsequent discovery and seizure of the drugs did not constitute an illegal search and seizure. Arguably, this can be considered a warrantless search and the seizure was justified by the need to preserve evidence. Contrary to the Petitioner's assertion . . . the narrowly defined "exigent circumstances" exception to the warrant requirement does apply in the present case because the Petitioner could have driven his vehicle away or disposed of the drugs.

Initially, we note that "[a] warrantless [stop] is presumed unreasonable and thus violates the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution." State v. Walker, 12 S.W.3d 460, 467 (Tenn. 2000); see also State v. Hicks, 55 S.W.3d 515, 527 (Tenn. 2001). There is no dispute that the stop in the instant case was made without a warrant; therefore, the stop is presumptively unreasonable. See State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998). However, "an investigatory stop is constitutionally permissible if the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." Id. (discussing Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)).

The facts forming the basis for an officer's reasonable suspicion need not rest upon the personal knowledge or observation of the officer. Simpson, 968 S.W.2d at 780. In Adams v. Williams, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924 (1972), the Supreme Court upheld the constitutionality of an investigatory stop and seizure, concluding that although the unverified tip may have been insufficient to support an arrest or search warrant, the information carried sufficient "indicia of reliability" to justify an investigative stop. Additionally, our supreme court has upheld the constitutionality of an investigative stop where reasonable suspicion supporting the stop was based on information from an anonymous tip. State v. Pulley, 863 S.W.2d 29, 34 (Tenn. 1993).

The court has also concluded that, in evaluating the reliability of an informant's tip, the factors set forth in State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989), are helpful in determining reasonable suspicion as well as probable cause. In Jacumin, id., our supreme court adopted the two-pronged Aguilar-Spinelli test "as the standard by which probable cause will be measured to see if the issuance of a search warrant is proper under Article I, Section 7 of the Tennessee Constitution." See Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964). In order to satisfy the Aguilar-Spinelli test, there must be information to establish the informant's veracity as well as the basis of the informant's knowledge. Jacumin, 778 S.W.2d at 432. "While independent police corroboration can make up deficiencies, 'each prong represents an independently important consideration that must be separately considered and satisfied in some way.'" Simpson, 968 S.W.2d at 781 (quoting Pulley, 863 S.W.2d at 31). Moreover, this court has previously observed that

an investigative stop requires only a showing of reasonable suspicion that does not rise to the level of probable cause. For showings of probable cause based on an informant's tip, our supreme court has

followed the former federal two-pronged test that requires proof of the informant's basis of knowledge and credibility. The <u>Aguilar-Spinelli/Jacumin</u> test has been used as a guide in assessing the reliability of an informant's tip supporting an investigative stop of an automobile. . . [even though] [r]easonable suspicion requires a lower level of proof, allowing for tips that are less reliable.

<u>State v. Kelly</u>, 948 S.W.2d 757, 761 (Tenn. Crim. App. 1996) (citations omitted). However, "the two-pronged test of reliability need not be as strictly applied if the informant's tip is being used to establish reasonable suspicion rather than probable cause." <u>Simpson</u>, 968 S.W.2d at 782; <u>see also</u> <u>State v. Jose Roberto Ortiz</u>, No. M1998-00483-CCA-R3-CD, 1999 WL 1295988, at *13 (Tenn. Crim. App. at Nashville, December 30, 1999), <u>perm. to appeal denied</u>, (Tenn. 2000), <u>cert. denied</u>, __ U.S. __, 121 S. Ct. 1096 (2001).

The only evidence before this court describing the content of the informant's tip is Officer Long's testimony at the petitioner's trial.[2] The following testimony occurred on direct examination:

Officer Long: On that date we received information that [the petitioner] was conducting drug sales from his vehicle. And received information about the vehicle he was driving. . . . That he was in a silver-colored Ford Mustang with a black convertible top.

State: Did you get his tag number as well?

Officer Long: Yes, sir. I did.
. . .
State: Were you able to confirm any of that information that you received in your tip regarding him parked, or the car, or the tag, or anything like that?

Officer Long: Yes, sir, I was. Some of the information I had prior to that day. . . . Well, the information that I had gotten was that he was going to be in the area of Whitehaven, in the area of Millbranch and Shelby Drive.

State: Did you find him there?

Officer Long: Yes, sir, I did. . . . I found [the petitioner], and found his vehicle. . . . He walked across the street, was on a pay phone. And I drove around the parking lot, checked the tags on the car, and

---

[2] During trial, the court held a jury-out hearing regarding the identity of the confidential informant. The transcript indicates that this testimony was ordered sealed by the trial court and was not included in the record on appeal.

as I said, I had seen the car on a few occasions during the past couple of months.

State: Did the car check out to be [the petitioner's] car?

Officer Long: Yes.

On cross-examination, Officer Long revealed that he had, earlier on the day in question, twice received information concerning the petitioner. Officer Long admitted that his informant did not specifically reveal if he had personally observed the petitioner's activities. Additionally, Officer Charles E. Tarwater testified that the police had the house of the petitioner's brother under surveillance and had information "all day" that the transaction was going to take place.

Our supreme court has observed that "[p]olice corroboration of several details of the informant's report may also satisfy unknowns about the informant's credibility." Simpson, 968 S.W.2d at 782. In the instant case, the police confirmed that the petitioner was at the location specified in the tip and that he was driving the vehicle described in the tip. Id. Thus, "[a] showing that the informant's data is reliable may satisfy the credibility prong." Id. The ability of police to corroborate the information regarding the petitioner's vehicle and the location where the petitioner would be found also indicates that there may have been a sufficient basis of knowledge on the part of the informant. See Simpson, 968 S.W.2d at 782-783; Kelly, 948 S.W.2d at 762. As a whole, the information given was sufficient, considering the totality of the circumstances, to give the police reasonable suspicion to detain the petitioner long enough to allow the drug dog to sniff the petitioner's car. See State v. David Price, No. 02C01-9610-CC-00356, 1997 WL 503073, at *4 (Tenn. Crim. App. at Jackson, August 25, 1997).

> Furthermore, this court has recently found that
> assuming reasonable suspicion, the appellant's brief detention and the officers' use of the drug detection dog were entirely consistent with the circumstances justifying the initial intrusion. . . . We have previously held that "[a] sweep of the outside of a vehicle by a trained drug detection dog does not constitute a search for Fourth Amendment purposes, but is a legitimate investigative technique." Moreover, the positive indication by the dog . . . would provide the necessary probable cause to search the interior of the vehicle pursuant to the automobile exception to the warrant requirement.

Ortiz, No. M1998-00483-CCA-R3-CD, 1999 WL 1295988, at *8 (citations omitted). Additionally, the petitioner has adduced no evidence casting doubt on the reliability of the drug detection dog. See State v. England, 19 S.W.3d 762, 768 (Tenn. 2000).

In the instant case, once reasonable suspicion was established, the petitioner was detained only five or ten minutes while the drug detection dog was en route. Upon arrival, the dog immediately indicated on the petitioner's trunk and further indicated on a duffel bag inside the trunk, thereby giving the police probable cause to open the trunk and the bag, respectively. Id. After the

contraband was discovered, the police then formally arrested the petitioner. Based upon this information, we conclude that the petitioner did not prove by clear and convincing evidence that, had the petitioner's trial counsel filed a motion to suppress, the motion would have been successful. Additionally, subsequent to his arrest, the petitioner gave a statement admitting his ownership of the drugs. The petitioner does not argue that the confession was not voluntary nor does he argue that the statement was the fruit of any prior illegality; he simply avers that he gave the statement in order to obtain the release of his companion, Irish Banks. Therefore, the petitioner has failed to prove that he was prejudiced by counsel's failure to file the motion.

The petitioner also argues that his counsel was ineffective by failing to object to improper direct examination of Officer Long. Specifically, the petitioner contends that the failure to object to the question, "Detective Long, when you confirmed the information you had in your tip, what, if anything, did you do at that point?" constituted ineffective assistance of counsel because "it relieves the State of its burden of proving that [the petitioner] possessed drugs with the intent to sell or deliver." However, the petitioner has failed to make any argument, cite to any authority, or cite to the record in support of this contention. Therefore, we conclude that the petitioner has waived this issue. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); State v. Hawk, 688 S.W.2d 467, 473 (Tenn. Crim. App. 1985). Regardless, because petitioner's trial counsel later questioned the officer regarding what information was confirmed in the tip, we conclude that counsel was neither deficient in failing to object to the question nor did the petitioner suffer prejudice due to counsel's failure to object. This issue is without merit.

### III.  Conclusion

Finding no reversible error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE