IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

APRIL 1997 SESSION

FILED

August 25, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 02C01-9610-CC-00356 |
| | ) | |
| | ) | Weakley County |
| v. | ) | |
| | ) | Honorable William B. Acree, Judge |
| | ) | |
| DAVID PRICE, | ) | (Certified question of law) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Joseph P. Atnip
District Public Defender
        and
James David Kendall
Assistant Public Defender
111 Main Street
Box 734
Dresden, TN 38225
(AT TRIAL)

James H. Bradberry
P.O. Box 789
Dresden, TN 38225
(AT TRIAL AND ON APPEAL)

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
        and
Marvin E. Clements, Jr.
Assistant Attorney General of Tennessee P.O.
450 James Robertson Parkway
Nashville, TN 37243-0493

Thomas A. Thomas
District Attorney General
        and
Jim Cannon
Assistant District Attorney General
P.O. Box 218
Union City, TN 38261

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

The defendant, David Price, was convicted upon his guilty plea in the Circuit Court of Weakley County for possession with the intent to sell marijuana, a Class E felony. He received a sentence of one year in the custody of the Department of Correction as a Range I, standard offender to be served in the county jail and a fine of two thousand dollars. The defendant appeals as of right a certified question of search and seizure law that is dispositive of this case: whether the stop and subsequent search of the defendant's vehicle violated his Fourth Amendment rights under the United States Constitution and Article I, Section 7 of the Tennessee Constitution. See T.R.A.P. 3(b); Tenn. R. Crim. P. 37(b). We affirm the trial court.

At the suppression hearing, Officer Ron Powers of the Martin Police Department testified that he saw the informant sitting in a car near a bar in Martin. He said that upon approaching the informant's car, he smelled marijuana and discovered a small amount of marijuana in the car. Officer Powers stated that the informant told him that he could turn in someone much bigger. He said that he did not arrest the informant, but instead, he and the informant met with the Drug Task Force. Officer Powers testified that the informant told the officers that he knew the defendant, that he had made several trips to Martin to purchase drugs from the defendant, and that he could arrange a purchase of a quarter of a pound of marijuana from the defendant.

Officer Powers testified that although he was not present when the call was made, the informant told him that he had called the defendant, that the defendant agreed to meet with the informant between 3:00 and 5:30 the next day at either the informant's workplace or at the informant's house after work, and that the cost of the drugs was two hundred and forty-five dollars. Officer Powers stated that the informant said that the defendant would be driving a blue, Mazda kingcab truck with a black

2

toolbox in the back and Gibson County tags, but he did not describe the defendant's appearance. Officer Powers conceded that the informant had never been used in the past and that he did not know the informant.                                     .

Officer Powers testified that the next day, he and Officer Tack Simmons of the Drug Task Force drove to a truck stop in Gibson County near the Weakley County line. He said that Officer Osborne and TBI Agent Champine went to another truck stop to conduct surveillance. He stated that after waiting a couple of hours, he saw a blue, Mazda kingcab truck with Gibson County tags traveling in the direction of the informant's house and workplace. Officer Powers testified that he and Agent Champine began following the defendant in separate vehicles. According to Officer Powers, Agent Champine radioed that the defendant was driving sixty-two miles per hour, and the defendant was stopped at approximately 5:30 p.m. He stated that when he informed the defendant that he was speeding, the defendant said that he remembered Officer Powers from an earlier stop when the defendant possessed marijuana. Officer Powers said that he told the defendant that he was going to give him a warning for the speeding and then asked for permission to search the defendant's truck, but the defendant refused. He testified that he told the defendant that a drug dog was with them and that they were going to take the dog around the truck. Officer Powers stated that Officer Simmons took the dog around the truck, and when the dog alerted that drugs were in the truck, the defendant stated, "It's in the toolbox."

On cross-examination, Officer Powers admitted that he did not know anything about the informant's prior criminal history and that the informant had not previously given any information as an informant. According to Officer Powers, the informant placed the call to the defendant approximately one hour after he caught the informant with marijuana. He conceded that the prosecutor made a deal with the informant after the informant called the defendant and stated that the deal was that the

3

charges for possession of marijuana would be dropped if the informant assisted them in turning in someone for a bigger possession of marijuana case. Officer Powers acknowledged that he had spoken to the prosecutor about obtaining a warrant but stated that a warrant was not obtained because he did not believe that the informant was reliable because he had never been used in the past. He testified that he believed the informant to be credible after he made the drug deal with the defendant. Officer Powers also conceded that he did not personally observe the defendant speeding and admitted that the officers planned on stopping the defendant based upon the informant's information regardless of the traffic violation. He stated that he routinely gave a warning rather than a traffic citation followed by a request for permission to search the vehicle. Officer Powers testified that the officers did not wait to stop the defendant until the defendant arrived at the informant's house for safety reasons and to protect the identity of the informant.

Officer Bryan Osborne of the Obion County Sheriff's Department testified that he was present when the informant called from the Drug Task Force's cellular telephone to arrange the drug deal with the defendant. He stated that he watched the informant punch in the phone number and said that the informant knew the defendant's phone number. Officer Osborne testified that he could hear the informant, but not the defendant, and that he heard the informant say that he needed to buy a "quarter" from the defendant and that he would see the defendant either at work or at home after 3:00 the next day. He said that what he heard from the conversation made him believe that the informant knew the defendant and that the informant had purchased drugs from the defendant on earlier occasions. Officer Osborne also testified that he was with Agent Champine when the defendant was being followed and when Agent Champine stopped the defendant for speeding. He stated that Agent Champine paced the defendant to determine whether the defendant was speeding, although Officer Osborne did not

4

personally observe the defendant speeding. He admitted that he did not know anything about the informant's background.

Officer Tack Simmons, a member of the Drug Task Force with the Union City Police Department, testified that he took the drug dog around the defendant's truck and that the dog scratched on the toolbox, indicating that drugs were inside. He admitted that he did not know anything about the informant's background and that he did not know the defendant other than that he was a white male.

Officer Scott Robbins testified that as the shift commander, he was advised at the beginning of the shift to be looking for a blue, Mazda truck with Gibson County tags and a toolbox because the Drug Task Force was looking for the defendant. He said that he had no information about the informant's call to the defendant or any other information about a drug delivery by the defendant.

The trial court overruled the defendant's motion to suppress, concluding that the officers had probable cause to stop and search the defendant's vehicle. The trial court also found that the defendant voluntarily informed the officers of the location of the drugs after the dog alerted that drugs were contained in the toolbox.

The defendant contends that the trial court erred by overruling his motion to suppress. He maintains that the stop and search of his vehicle violated his Fourth Amendment rights because the state failed to establish that the informant was reliable and that the deficiency had not been overcome by proof of independent police corroboration. In support of his argument, the defendant relies upon State v. Coleman, 791 S.W.2d 504 (Tenn. Crim. App. 1989). The state responds that the trial court properly overruled the defendant's motion to suppress because the officers had probable cause to stop the defendant for a traffic violation. The state also asserts that

5

the officers had reasonable suspicion to stop the defendant based upon the informant's information that was also corroborated by the officers.

Both the state and federal constitutions protect individuals from unreasonable searches and seizures. An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution. See Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); State v. Pully, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994). Generally, we note that the police are entitled to stop a car for investigative purposes if they have reasonable suspicion, based upon specific and articulable facts, that an offense is being or is about to be committed. See State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992).

When a stop is based on the tip of an informant, the factors set forth in State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989), are useful in considering the reliability of the tip. Pully, 863 S.W.2d at 31. Our supreme court adopted the two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1960). Id. at 436. In Aguilar, the United States Supreme Court concluded that there must be a "basis of knowledge" when an officer relies on an informant's tip. The "veracity" prong of the Aguilar-Spinelli test requires a showing that the informant is credible or the information is reliable. The Jacumin court held that:

> while independent police corroboration could make up deficiencies in either prong, each prong represents an independently important consideration that "must be separately considered and satisfied in some way."

778 S.W.2d at 436 (quoting Commonwealth v. Upton, 476 N.E.2d 548, 557 (Mass. 1985)); see Pully, 863 S.W.2d at 31. An investigatory stop based upon reasonable

6

suspicion requires "'a lower quantum of proof than probable cause.'" Pully, 863 S.W.2d at 31.

> "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."

Id. at 32 (quoting Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990)). The question of reasonable suspicion is answered by considering the totality of the circumstances, including looking at the gravity of the public concern at stake, the degree the police intrusion advances that concern and the severity of the intrusion. See Pully, 863 S.W.2d at 30; Watkins, 827 S.W.2d at 294.

On appeal, the trial court's findings of fact and conclusions of law at the conclusion of a suppression hearing will be upheld unless the evidence preponderates otherwise. State v. Odom, 928 S.W.2d 18, 22-23 (Tenn. 1996). The defendant bears the burden of demonstrating that the evidence preponderated against the trial court's findings. Id.

The state acknowledges on appeal that it conceded at the suppression hearing that the stop of the defendant was a pretextual stop in that the stop was not based upon the speeding violation, but upon the drug information. However, it relies upon Whren v. United States, 517 U.S. ___, 116 S. Ct. 1769 (1996), and State v. Davey Joe Vineyard and Jimmy Lee Cockburn, Nos. 03C01-9502-CR-00052 & 03C01-9502-CR-00053, Bradley County (Tenn. Crim. App. July 18, 1996), app. granted (Tenn. Dec. 12, 1996), to argue that the trial court properly ruled that the stop was reasonable because the officers had validly stopped the defendant for a traffic violation, regardless of their motive to investigate for drugs during the stop. In Whren, the United States Supreme Court held that a traffic stop is reasonable under the Fourth Amendment

when the police have probable cause to believe that a traffic violation has occurred regardless of the actual motivations of the officers involved, unless the stop is for a constitutionally impermissible reason, such as selective enforcement of the law based upon considerations such as race. 517 U.S. at ___, 116 S. Ct. at 1774. Thus, the stop in the present case was reasonable under our federal constitution.

Also, this court followed Whren in Vineyard, a case that is presently before the Tennessee Supreme Court, for consideration of the traffic stop issue under Tennessee law. We need not determine in this case, though, whether the Tennessee Constitution provides greater protection than the Fourth Amendment, because we conclude that the officers had the right to stop the defendant based upon the informant's information as corroborated by the officer's observations.

The officers were sufficiently apprised of the informant's basis of knowledge through the informant's telephone call to the defendant arranging a drug sale. The informant told Officer Powers that the defendant agreed to sell to him a quarter of a pound of marijuana the next day. Officer Osborne overheard the informant making the phone call. Moreover, the informant said that he had purchased drugs from the defendant on earlier occasions. These facts establish the informant's basis of knowledge.

Regarding the veracity prong, the evidence reflects that Officer Powers did not know the informant before he saw him smoking marijuana in his car outside a bar. Also, the officers knew nothing about the informant's background, including any prior criminal history, and the informant had never given the officers information in the past. However, the informant told Officer Powers that he could turn in someone much bigger. The informant then made a deal for the defendant to sell a quarter of a pound

8

of marijuana the next day. Officer Osborne overheard the informant making the arrangement.

The informant disclosed to the officers that the defendant said that he would meet him at work or at his home between 3:00 and 5:30, and he described the defendant's vehicle as a blue, Mazda kingcab truck with a black toolbox and Gibson County tags. The officers began surveillance at a truck stop near the county line and saw a truck matching the description given by the informant and traveling in the direction of the informant's workplace and home at approximately 5:30 p.m.

We believe that the facts of this case are distinguishable from those in Coleman where an anonymous informant called the police claiming that the defendant was driving an older model black Monte Carlo along a specified highway and that the vehicle contained marijuana. Though the informant's statements were not sufficient by themselves to establish probable cause to stop the defendant, we hold that the facts sufficiently demonstrate that, given the statements and the corroboration, the officers had, at least, reasonable suspicion supported by specific and articulable facts that a crime was being or was about to be committed by the defendant.

We must also determine whether the detention of the defendant was reasonable. Upon stopping a motor vehicle based on "reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed," an officer may briefly detain the occupants of the vehicle for questioning. See Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); Watkins, 827 S.W.2d at 294. Here, after stopping the defendant, the officers asked the defendant for permission to search the truck, and the defendant refused. The officers then took a drug dog that was with them at the scene around the defendant's truck. A sweep of the outside of a vehicle does not constitute a search, but rather is a legitimate investigative

9

technique.  See United States v. Place, 462 U.S. 696, 707, 103 S. Ct. 2637, 2644-45 (1983); Romo v. Champion, 46 F.3d 1013, 1018 (10th Cir. 1995); see also State v. James Smith, Jr., No. 38, Shelby County, slip op. at 4 (Tenn. Crim. App. Dec. 14, 1988).  Weighing the public concern for the illegal possession and distribution of drugs, the degree to which the seizure advanced that concern and the minimal intrusion that took place, we conclude that the investigatory stop in this case was reasonable.

When the dog was taken around the defendant's truck, it alerted that drugs were inside the toolbox.  At that time, the defendant admitted to the officers that drugs were in the toolbox.  These facts sufficiently elevated the officers' reasonable suspicion to probable cause, justifying the search of the defendant's truck.

Under these circumstances, we conclude that the stop was justified and that the seizure of the marijuana was based upon probable cause.  In consideration of the foregoing and the record as a whole, we affirm the defendant's judgment of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
David G. Hayes, Judge

_____
William M. Barker, Judge