IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 13, 2001 Session

## STATE OF TENNESSEE v. SRIRASACK SRISAVATH

**Direct Appeal from the Criminal Court for Williamson County**
**No. I-298-63     Timothy L. Easter, Judge**

**No. M2000-02159-CCA-R3-CD Filed March 8, 2001**

The defendant, Srirasack Srisavath, was convicted of possession of marijuana with intent to sell. The trial court imposed a sentence of one and one-half years and assessed a fine of $2,000.00.  In this appeal of right, the defendant challenges the propriety for the investigatory stop which led to the discovery of the marijuana.  Because the stop was not adequately supported by articulable facts, the trial court erred by overruling the motion to suppress evidence.  The judgment is, therefore, reversed and the cause dismissed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Reversed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Charles C. Morrow, Nashville, Tennessee, for the appellant, Srirasack Srisavath.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; and Mary Katherine Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Near midnight on October 30, 1997, Brentwood Police Sergeant William Richardson received a dispatch to the Extended Stay Hotel at the corner of Church Street and Summit View Place.  The dispatch was in response to a telephone call from an unidentified person who reported that "there were six to eight teenagers in baggy pants running around [the hotel parking lot] looking into parked cars."  There had been several auto burglaries in parking lots during that period of time and extra officers had been assigned to the area.  Sergeant Richardson was a little over a block away from the Extended Stay Hotel when he received the dispatch. After he drove to the intersection of Church Street and Summit View Place, he saw the defendant, accompanied by three other males, drive his vehicle from Summit View Place onto Church Street.  There were no parked cars in the portion of the hotel parking lot that was visible to Officer Richardson, and the other parking spaces were blocked.  The officer turned around and stopped the defendant on Church Street.  A short time

later, a second officer was called to the scene. When the second officer saw the passenger in the front seat lean forward, he searched the inside of the vehicle and found a bag of marijuana underneath the seat.

The trial court denied the defendant's motion to suppress, concluding that the investigatory stop was based upon a reasonable suspicion supported by articulable facts. It ruled that the late hour, the high number of auto burglaries in the area, and the anonymous call "regarding the presence of juveniles loitering around vehicles at the Extended Stay Hotel" warranted the intrusion.

In determining a motion to suppress, the trial court is entrusted with questions of credibility of the witnesses, the weight and value of the testimony, and the resolution of conflicting evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The determination made by the trial court will be upheld unless the evidence preponderates otherwise. Id. The application of the facts to the law, however, requires de novo review. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Under Article I, Section 7 of the Tennessee Constitution and the Fourth Amendment to the United States Constitution, a warrantless search or seizure is presumptively unreasonable and any evidence discovered thereby is subject to suppression unless one of the narrowly defined exceptions applies. Id. A warrantless investigatory stop, however, based upon reasonable suspicion and supported by specific, articulable facts that a criminal offense has been or is about to be committed, is permissible. Terry v. Ohio, 392 U.S. 1 (1968); State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997).

Our courts have held that the Terry doctrine applies to persons in a vehicle. See, e.g., State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution. See State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993). That the detention may be brief and limited in scope does not alter the fact that a seizure has occurred. Id. The basic question is whether the seizure was "reasonable." State v. Binion, 900 S.W.2d 702, 705 (Tenn. Crim. App. 1994) (citing Michigan Dep't of State Police v. Sitz, 496 U.S. 444 (1990)). The state always carries the burden of establishing the reasonableness of any detention. See State v. Matthew Manuel, No. 87-96-III (Tenn. Crim. App., at Nashville, Nov. 23, 1988).

To determine the reasonableness of a stop, a court must first decide whether the officer had an "articulable and reasonable suspicion" that the vehicle was used for an illegal purpose or that its occupants had violated the law. Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). The officer's suspicion should be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30; Coleman, 791 S.W.2d at 505. In Pulley, our supreme court, following Alabama v. White, 496 U.S. 325 (1990), stated that:

[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

863 S.W.2d at 32 (quoting Alabama v. White, 496 U.S. 325, 330 (1990)).

Our supreme court has determined that the relevant circumstances in determining reasonable suspicion include the officer's own observations, the information gathered from other officers, the information gathered from citizens, and the defendant's pattern of operations. The ruling also endorsed the rational inferences made by a trained officer from the facts known. Watkins, 827 S.W.2d at 294; Yeargan, 958 S.W.2d at 630; see also United States v. Cortez, 449 U.S. 411, 417 (1981). Yet the officer must also rely upon "something more than an inchoate and unparticularized suspicion or hunch." United States v. Sokolow, 490 U.S. 1, 2 (1989).

Here, the information provided to police by an anonymous informant was that six to eight teenagers in baggy pants had been looking in the windows of cars parked in a hotel parking lot. Police were particularly alert because there had been automobile burglaries in the general area. When the officer arrived at the street corner adjacent to the hotel, he saw the 24-year-old defendant driving a vehicle occupied by three other individuals. The officer did not see the defendant commit an offense, traffic or otherwise, but suspected that the car may have been in the hotel parking lot. According to the record, however, the officer could not see any other parked cars in the portion of the lot nearest to the intersection when he first observed the defendant. The officer was unable to corroborate the anonymous tip[1] either by patrolling the entire lot, circling the hotel, or looking for youths in baggy pants. The officer had no description of any car driven by the suspects or, in fact, any knowledge as to whether they were in a car. The anonymous informant, while perfectly justified in being suspicious of individuals looking into the windows of parked cars, did not actually see any criminal conduct. While the issue is close, it is our view that the totality of the circumstances did not warrant an investigatory stop.

Accordingly, the judgment is reversed, the evidence suppressed, and the cause dismissed.

_____
GARY R. WADE, PRESIDING JUDGE

_____

[1]Our supreme court upheld an investigatory stop in Pulley based upon an anonymous informant's tip that someone was driving through a neighborhood threatening residents with a gun. In Yeargan, footnote 9 implies that the standard of suspicion is reduced when impending violence is involved. In this case, there was no suggestion of violence.