IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 18, 2004

## STATE OF TENNESSEE v. RICKY ALLEN FRAZIER

**Appeal from the Criminal Court for Sullivan County**
**No. S46,293      R. Jerry Beck, Judge**

---

**No. E2003-02853-CCA-R3-CD - July 9, 2004**

---

The defendant, Ricky Allen Frazier, entered pleas of guilt to possession of Oxycodone, a Class A misdemeanor; possession of more than one-half ounce of marijuana for resale, a Class E felony; manufacturing marijuana, a Class E felony; possession of drug paraphernalia, a Class A misdemeanor; possession of open title, a Class C misdemeanor; violation of the registration law, a Class C misdemeanor; speeding, a Class C misdemeanor; and maintaining a dwelling where a controlled substance is used or sold, a Class D felony. The trial court imposed an effective sentence of six years. As a part of the plea agreement, the defendant reserved a certified question of law under Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure. The single question presented for review is whether the search and seizure of the defendant and his vehicle violated the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution. The judgments are affirmed.

### Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Cary C. Taylor, Kingsport, Tennessee, for the appellant, Ricky Allen Frazier.

Paul G. Summers, Attorney General & Reporter; Michelle Chapman McIntire, Assistant Attorney General; and Joseph Eugene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In early August 2001, Sergeant Dale Phipps and other officers of the Kingsport Police Department, acting on a tip from an unnamed citizen that a shipment of thirty to forty pounds of marijuana was to be delivered at the trailer on August 7, conducted surveillance of a trailer located at 1745 Audie Street in Kingsport for three or four days. During that time, the defendant and Larry Henson were seen at the trailer on a regular basis with, according to Sergeant Phipps, "traffic coming

and going . . . conducting some sort of business." On August 8, the defendant and Henson entered the trailer and after 15 to 20 minutes, Henson walked outside and placed a "rolled up brown paper bag," which Sergeant Phipps estimated to be of a size capable of containing one-half pound of marijuana, into the trunk of a white Cadillac. Henson waited in the passenger side of the vehicle until the defendant emerged from the trailer and drove the vehicle away.

As Sergeant Phipps and Detective Rusty Wallace continued to watch the trailer, two other officers, Kingsport Police Detectives Joey Graham and Sean Chambers, searched for and found the vehicle driving on Virginia Avenue. A prior check of the license plate number had established that the number was not registered to a Cadillac but to a Chevrolet Cavalier. The two detectives, driving an unmarked vehicle, paced the Cadillac, which had no brake lights, at 45 mph through a 30 mph zone. When the defendant drove into the parking lot of the Midway Market, the detectives also stopped there. Detective Chambers, who was dressed in street clothes, walked to the driver's side of the vehicle, showed the defendant his badge, and identified himself as a police officer. According to Detective Chambers, neither of the cars blocked the path of the Cadillac. When the defendant opened his car door, Detective Chambers immediately detected a "reeking" odor of marijuana on his person. Detective Chambers asked the defendant to step out of the car and requested permission to search his person. The defendant replied, "Go ahead." Shortly thereafter, two uniformed officers, Sergeant Jerry Robinson and Officer Justin Quillen, arrived at the scene in separate, marked patrol cars. Upon searching the defendant, Detective Chambers found $9,527.00 in cash in the defendant's pocket. After asking for and receiving the defendant's permission to search the vehicle, Detective Chambers looked throughout the passenger compartment of the car, finding nothing. The detective then asked the defendant for the keys to the trunk and was directed to the ignition of the vehicle. Detective Chambers removed the keys, opened the trunk, and found inside the brown paper bag eight individually wrapped bags of marijuana having a total weight of more than 200 grams. Detective Chambers conceded that by the time he asked to search the vehicle, the defendant was no longer free to leave. It was his contention that the defendant was free to leave until the cash was found in his possession.

Later, a search warrant was issued for the trailer. Two and one-half pounds of marijuana were found inside. The defense did not offer any proof at the hearing on the motion to suppress.

At the conclusion of the hearing on the motion to suppress, the trial court accredited the testimony of Detective Chambers and determined that although there were sufficient grounds for the officers to stop the defendant, the defendant had actually stopped his vehicle at the convenience store of his own accord and was not the subject of an investigatory stop initiated by law enforcement. The trial court also concluded that the initial encounter between the defendant and Detective Chambers did not constitute a seizure. It ruled that the defendant was not "in custody" until Detective Chambers found the cash in the defendant's pocket. The trial court concluded that the discovery of the cash, along with the odor of marijuana and the detectives' observations during the surveillance, gave the officers probable cause to arrest the defendant and to search the vehicle he was driving.

The defendant argues on appeal that the tip provided by a citizen informant, the period of surveillance, and the officers' observance of the brown paper bag being placed into the trunk of the vehicle was insufficient to establish the requisite suspicion to warrant the initial detention. In addition, he claims that the additional information acquired by the officers after the vehicle was stopped at the convenience market did not rise to the level of probable cause to arrest. He also argues that the consent to the search of his person and his vehicle was involuntary because he was "surrounded by four officers" at the convenience market. The state submits that the certified question is too broad and, therefore, does not comply with the requirements of Rule 37. In the alternative, the state asserts that the trial court correctly denied the defendant's suppression motion.

Both the state and federal constitutions protect individuals from unreasonable searches and seizures; the general rule is that a warrantless search or seizure is presumed unreasonable and any evidence discovered subject to suppression. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). Neither, however, limits all contact between citizens and law enforcement and both are designed, instead, "'to prevent arbitrary and oppressive interference with the privacy and personal security of individuals.'" INS v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976)). Our courts have recognized three types of police-citizen interactions: (1) a full scale arrest, which must be supported by probable cause; (2) a brief investigatory stop, which must be supported by reasonable suspicion; and (3) a brief police-citizen encounter, which requires no objective justification. See Florida v. Bostick, 501 U.S. 429, 434 (1991); Brown v. Illinois, 422 U.S. 590 (1975); Terry v. Ohio, 392 U.S. 1 (1968). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n.16.

In State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993), our supreme court ruled that "the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy."

Our determination of the reasonableness of a stop of a vehicle depends on whether the officer had either probable cause or an "articulable and reasonable suspicion" that the vehicle or its occupants were subject to seizure for violation of the law. See Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989). Probable cause has been generally defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. See Lea v. State, 181 Tenn. 378, 380-81, 181 S.W.2d 351, 352 (1944). While probable cause is not necessary for an investigative stop, it is a requirement that the officer's reasonable suspicion be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; Pulley, 863 S.W.2d at 30; Coleman, 792 S.W.2d at 505; see also State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (applying Terry doctrine in context of vehicular stop). In determining whether reasonable suspicion exists, an important factor in the analysis is that reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be

established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Pulley, 863 S.W.2d at 32 (citing Alabama v. White, 496 U.S. 325, 330 (1990)).

Courts considering the issue of reasonable suspicion must look to the totality of the circumstances. Those circumstances include the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Objective standards apply rather than the subjective beliefs of the officer making the stop. State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); see also Stephenson, 878 S.W.2d at 544; State v. Goforth, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. Odom, 928 S.W.2d at 23. The application of the law to the facts, however, requires de novo review. State v. Daniel, 12 S.W.3d 420, 423-24 (Tenn. 2000). Likewise, if the evidence does not involve a credibility assessment, the reviewing court must examine the record de novo without a presumption of correctness. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In United States v. Drayton, 536 U.S. 194, 201-02 (2002), the United States Supreme Court determined that there is no Fourth Amendment violation when an officer simply approaches a person in a public place and poses a question. Even when there is no basis to suspect a crime, officers may ask questions, ask for identification, and ask for consent to conduct a search, so long as the means used to induce the cooperation are not coercive. Id.; see State v. Daniel, 12 S.W.3d 420, 425 (Tenn. 2000). A reviewing court must examine "all the circumstances surrounding the encounter" in determining whether the law enforcement conduct would have indicated a lack of freedom "to decline the officers' requests or otherwise terminate the encounter." Bostick, 501 U.S. at 439. As indicated, the subjective intent of the officer is not controlling. State v. Johnson, 980 S.W.2d 414 (Tenn. Crim. App. 1998).

In this instance, of course, the trial court found that there was no coercive action on the part of the police and no indication that the defendant was not free to leave during the original confrontation, at least until the large amount of cash was found on his person. The trial court ruled that because the initial exchange was "friendly" and "strictly consensual," the defendant was not yet in custody. In our view, the trial court, which saw and heard the witnesses at the suppression hearing, did not err by concluding that the defendant was not in custody at the time of his initial

encounter with Detective Chambers. Moreover, even if the initial encounter qualified as an investigatory stop, the state had established the requisite level of articulable suspicion warranting an intrusion for investigatory purposes. A citizen had provided a tip that an illegal drug transaction was about to occur at a specific place. Over a three- or four-day period, police had observed regular visitation to the trailer by a variety of people, including the defendant and co-defendant, Henson, and watched as a brown paper bag, which Sergeant Phipps testified was commonly used to transport illegal drugs, was placed by Henson into the trunk of the defendant's vehicle. The license plate on the Cadillac being driven by the defendant had been issued to a Chevrolet Cavalier. Detective Chambers observed the defendant exceed the speed limit and drive without brake lights. Under the totality of the circumstances, a brief investigatory detention would have been warranted.

It is well settled that a search conducted pursuant to a voluntary consent is an exception to the requirement that all searches and seizures be conducted pursuant to a warrant. State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996) (citing Schneckloth v. Bustamonte, 412 U.S. 218 (1973)). "To pass constitutional muster, consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992). The following factors are used to evaluate the voluntariness of the consent:

(1) whether the defendant is in custody;
(2) the length of detention prior to the giving of consent;
(3) the presence of coercive police procedures;
(4) the defendant's awareness of the right to refuse to consent;
(5) the defendant's age, education and intelligence;
(6) whether the defendant understands his constitutional rights;
(7) the extent of the defendant's prior experience with law enforcement; and
(8) whether the defendant was injured, intoxicated, or in ill health.

See, e.g., State v. Carter, 16 S.W.3d 762, 769 (Tenn. 2000). The state must show "more than acquiescence to a claim of lawful authority." Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968). The trial court's finding that a search is consensual will not be overturned unless the evidence preponderates against the ruling. Brady v. State, 584 S.W.2d 245, 251-252 (Tenn. Crim. App. 1979).

Although an unmarked police car containing two plain-clothed officers, one of whom identified himself as an officer, first arrived at the convenience market, two other uniformed officers in a marked vehicle eventually arrived at the scene. Although the defendant claimed that one of the police cars partially blocked his vehicle and that the presence of four officers was patently coercive, the trial court concluded otherwise. The trial court ruled that under the entirety of the circumstances, the defendant was not under arrest or even subject to an investigatory detention at the time the officer sought consent to search his person. The only proof offered at the hearing on the motion to suppress was that the defendant freely consented to the search of his person and, later, to the search of his vehicle.

Further, the warrantless search of an automobile is permissible under certain circumstances. If the officer has probable cause to believe the vehicle contains contraband, the mobility of the vehicle is an exigent circumstance warranting an immediate search. Carroll v. United States, 267 U.S. 132, 153-56 (1925); State v. Leveye, 796 S.W.2d 948, 950 (Tenn. 1990). If probable cause justifies a search of a vehicle, it justifies a search of every part of the vehicle, including the trunk. United States v. Ross, 456 U.S. 798, 823-24 (1982).

In our view, the relatively large amount of cash found in the possession of the defendant coupled with the marijuana odor and the officers' observations at the trailer established probable cause to arrest. In addition, the mobility of the vehicle and the likelihood that it contained contraband justified its search.

Accordingly, the judgments are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE