IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2013 Session

## STATE OF TENNESSEE v. KURT GADKE

**Appeal from the Circuit Court for Williamson County**
**No. II-CR126080    James G. Martin, III, Judge**

**No. M2012-01519-CCA-R3-CD - Filed August 26, 2013**

The Defendant-Appellant, Kurt Gadke, entered a guilty plea to driving under the influence (DUI) in exchange for a sentence of eleven months and twenty-nine days probation after service of forty-eight hours in jail.  As a condition of his guilty plea, the Defendant-Appellant reserved a certified question of law challenging the denial of his motion to suppress which was based upon an alleged unconstitutional stop and arrest.  Following our review, we affirm the judgment of the trial court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and JEFFREY S. BIVINS, JJ., joined.

Charles D. Buckholts, Nashville, Tennessee for the Defendant-Appellant, Kurt Gadke.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Kim R. Helper,  District Attorney General; and Jessica Borne, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On August 20, 2011, Gadke was stopped by Deputy Raechel Haber of the Williamson County Sheriff's Office while driving in Williamson County, Tennessee.  After failing to perform several field sobriety tasks, Deputy Haber arrested Gadke for driving under the influence of an intoxicant.  Gadke later filed a motion to suppress arguing that Deputy Haber lacked reasonable suspicion to support the stop and arrest.  The trial court denied the motion, and Gadke subsequently entered a negotiated guilty plea.  Pursuant to  Tennessee Rule of

Criminal Procedure 37(b)(2), Gadke properly reserved the following certified question of law for our review:

> [W]hether from the totality of the circumstances, [the arresting deputy] had either probable cause or reasonable suspicion that Kurt Gadke's vehicle and Kurt Gadke were subject to seizure for violation of the law based upon [the deputy's] observation and the police car videotape of Mr. Gadke driving on Moore's Lane and Franklin Road on or about [the offense date].

At the November 16, 2011 preliminary hearing, Deputy Haber testified that she was on duty at approximately 1:45 a.m. on August 20, 2011. A white Cadillac "caught her attention" because it was following "very closely" behind a charcoal Honda Accord, later determined to be driven by Gadke. She began following both cars on Moore's Lane until they turned onto Franklin Road. During this time, she observed the Accord have difficulty maintaining its lane of travel. She testified that the Accord was "swerving within its lane, as well as going over the fog line and the center double yellow line." Deputy Haber said that the Accord crossed the center line or fog line at least three times. She activated her blue lights and initiated a stop of the Accord when it turned onto Allendale Drive.

When she approached the Accord, Deputy Haber observed a strong odor of alcohol and noticed that Gadke had bloodshot, watery eyes. She said that Gadke told her the Cadillac had been following him because, "I had gotten behind them." The driver of the Cadillac had called Gadke and said, "'I'm going to stay behind you on your way home because there's a police officer behind you.'" Gadke failed to perform several field sobriety tests and admitted that he had consumed two beers. Pursuant to the implied consent law, Gadke submitted to a blood test which resulted in a blood alcohol content of .14 percent.

On cross-examination, Deputy Haber said that the Cadillac appeared to "cover" for the Accord, "following him very closely and following his traffic patterns as well." She conceded that she could not recall whether the Accord crossed the center line or the fog line, but insisted that the vehicle crossed one of those lines at least three times. The incident was recorded by Deputy Haber's in-car camera, which was attached to the passenger side of her car. Although the recording shows that the Cadillac obstructed the view of the Accord at times, Deputy Haber testified that she maintained a visual of the Accord despite the efforts of the Cadillac.

At the April 17, 2012 suppression hearing, Deputy Haber provided substantially the same testimony. She testified that she was certain the Accord crossed the center line or fog line at least three times. She stated, "Based on my training and experience, I've always been taught that the standard is three times. Often times I'll get a lot more than three, but I always

make sure to stop – or observe the vehicle crossing the line three times." In addition, she testified that she initiated the stop after she observed the Accord make a wide right turn onto Allendale Drive and begin to drive down the center of the road.

On cross-examination, Deputy Haber was unable to recall the exact number of times the Accord crossed the line, but restated that it was more than three times. Initially, Deputy Haber asserted that the in-car camera captured all of the illegalities that she observed. However, she later testified that the in-car camera view was obstructed by the Cadillac at certain points during the recording. She also stated that she did not activate the camera until she had followed the vehicles onto Franklin Road, and as a result, some traffic violations that occurred on Moore's Lane were not captured by the videotape.

In denying Gadke's motion to suppress, the trial court determined that Deputy Haber had reasonable suspicion to conduct an investigatory stop of Gadke's car because it had crossed the center and fog lines three times, another car was following Gadke's car at an unsafe distance, and Gadke made a wide right turn while turning onto Allendale Drive. Finally, the trial court concluded that Deputy Haber's testimony was credible.

## ANALYSIS

In this appeal, Gadke contends that Deputy Haber lacked reasonable suspicion to initiate a stop of his car. He argues that the testimony of Deputy Haber was inconsistent and non-specific because she was unable to recall whether Gadke crossed the center line or fog line or the exact number of times that either line was crossed. Gadke further asserts that the testimony of Deputy Haber is contradicted by the videotape captured by her in-car camera, which he maintains does not show his vehicle crossing either line or committing any other traffic violation that would provide reasonable suspicion to initiate the stop.

In response, the State contends that Deputy Haber observed Gadke swerve within his own lane as well as cross either the center line or fog line, in violation of Tenn. Code Ann. Section 55-8-123(1), which provided Deputy Haber with reasonable suspicion to initiate a stop of his vehicle. The State argues that the trial court credited Deputy Haber's testimony regarding her observations, and the evidence does not preponderate against this finding. Upon review, we agree with the State.

The standard of review applicable to suppression issues involves a mixed question of law and fact. State v. Garcia, 123 S.W.3d 335, 342 (Tenn. 2003). It is well-established that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The Tennessee Supreme Court explained this standard in Odom:

Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.

Id. However, this court's review of a trial court's application of the law to the facts is de novo with no presumption of correctness. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); (citing State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). The defendant bears the burden of showing that the evidence preponderates against the trial court's findings. Odom, 928 S.W.2d at 23; Yeargan, 958 S.W.2d at 629.

Contrary to Gadke's argument, State v. Binette, 33 S.W.3d 215 (Tenn.2000) does not provide the proper standard of review. Significantly, Binette applies only "when a trial court's findings of fact on a motion to suppress are based ***solely*** on evidence that does not involve issues of witness credibility." Id. at 217 (emphasis added). In Binette, the State presented ***only*** the videotape evidence, and did not present any live witnesses during the hearing; therefore, the more deferential, preponderance standard, was not appropriate because the trial court based its decision "solely on evidence that [did] not involve issues of credibility." Id. The Tennessee Supreme Court held that in such cases, a trial court's findings of fact are subject to de novo review. Id. Unlike Binnette, the present case involves both videotape evidence and live testimony from the arresting officer, which created issues of credibility for the trial court. The trial court specifically made a finding of fact regarding the credibility of the testifying officer, which will be upheld "unless the evidence preponderates otherwise." Odom, 928 S.W.2d at 23; see also State v. Garcia, 123 S.W.3d 335, 343 (2003) (applying the Odom standard where the evidence presented included both videotape evidence as well as live testimony).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. See U.S. Const. amend IV; Tenn. Const. art. 1, § 7. A warrantless search or seizure is presumed unreasonable, and evidence obtained as a result will be suppressed "unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." Yeargan, 958 S.W.2d at 629 (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)). The stop of a vehicle and detention of individuals during the stop amounts to a seizure for purposes of both the Fourth Amendment to the United States Constitution and article I,

section 7 of the Tennessee Constitution, and thus is subject to the reasonableness requirement. Whren v. United States, 517 U.S. 806, 809-10 (1996); Binette, 33 S.W.3d at 218. However, a well-established exception to the warrant requirement is for an investigatory stop based upon "a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." Terry, 392 U.S. at 21. Probable cause is not required for an investigatory stop. State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989) (citing Terry, 391 U.S. at 27; Hughes v. State, 588 S.W.3d 296, 305 (Tenn 1979)).

The Tennessee Supreme Court has defined reasonable suspicion as "a particularized and objective basis for suspecting the subject of a stop of criminal activity." Binette, 33 S.W.3d at 218 (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)). Although reasonable suspicion is a less demanding standard than probable cause, see State v. Day, 263 S.W.3d 891, 902 (citing Alabama v. White, 496 U.S. at 330), it requires more than an "inchoate and unparticularized suspicion or 'hunch.'" Day, 263 S.W.3d at 902 (citing Terry, 392 U.S. at 27). The officer's reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Day, 263 S.W.3d at 902 (citing Terry, 392 U.S. at 27). In determining whether reasonable suspicion exists, the court must consider the totality of the circumstances, including, but not limited to, personal observations and "rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him." Yeargan, 958 S.W.2d at 632 (citing United States v. Cortez, 449 U.S. 411, 418 (1981); Terry, 392 U.S. at 21; State v. Watkins, 827 S.W.2d 293, 294(1992)). For an investigatory stop, reasonable suspicion will be found to exist "only when the events which occurred leading up to the stop would cause an objectively reasonable police officer to suspect criminal activity on the part of the individual stopped." State v. Levitt, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001) (citing Ornelas, 517 U.S. at 695) (internal quotations removed).

In denying the motion to suppress, the trial court stated the following:

The Court finds that on August 12 [sic], 2011, at 1:45 in the morning, [Deputy] Raechel Haber, with the Williamson County Sheriff's Department, was on duty, she was on Moore's Lane at a gas station when she observed a Honda Accord and a white Cadillac on Moore's Lane travelling [sic] towards Franklin Road.

She then followed the two vehicles for a period until they got to the intersection of Moore's Lane and Franklin Road. And during the course of the time she followed the two vehicles north on Franklin Road, she observed the

Honda Accord swerve and cross or touch the center yellow line or white fog line on the right on three different occasions.

Prior to that, though, she had observed the Cadillac following very closely to the Honda Accord, which caused her concern for two reasons. It's been her experience that on occasion when a driver may have some difficulty operating a vehicle, another driver will assist by following. It is also of concern that if there's an accident, then both vehicles are going to be implicated; so that caused concern for [Deputy] Haber when she observed the conduct in question, in addition to observing the Honda Accord touch or cross the center line or fog line on three different occasions.

It has now been quite some time since the incident, [Deputy] Haber's recollection is very clear that based on her custom and practice, she won't make a stop unless she observes at least three occasions when a vehicle swerves in their lane and touches or crosses either a center line or fog line.

The video in this case was taken from quite some distance. It did not start until [Deputy] Haber made the right turn on Franklin Road, so the behavior of the two vehicles prior to the time the vehicles turned onto Franklin Road off of Moore's Lane is not captured within the video itself.

[Deputy] Haber then testified that as she observed the Honda Accord make the right turn onto Allendale, it turned wide to the right, and then, essentially, occupied the center of Allendale prior to the time that she made the stop.

While the Court concedes that these facts, in some measure, are not evident in from the video, the Court does find [Deputy] Haber to be credible. The Court credits her testimony, and concludes that she did have a reasonable basis, supported by specific and articulable facts, to make the stop, and for that reason the Court denies the Motion to Suppress.

Upon our review of the record, we conclude that the evidence does not preponderate against the trial court's denial of Gadke's motion to suppress. While Deputy Haber's testimony is not without inconsistencies, she testified that she initiated the stop of Gadke because she had "observed the vehicle failing to maintain its lane of travel at least three times." We further acknowledge that Deputy Haber was unable to articulate the exact number of times the Accord crossed the center line or fog line; however, as noted by the trial court, she testified that her standard practice was to "observe the vehicle cross the line three

times" before initiating a stop. She also said that based on her training, she believed that the white Cadillac was following Gadke's car in an attempt to cover up Gadke's poor driving and possible impairment. Here, the trial court specifically found the testimony of Deputy Haber to be credible. Accordingly, any inconsistencies in Deputy Haber's testimony were resolved by the trial judge as trier of fact. Odom, 928 S.W.2d at 23.

We have also reviewed the videotape, and conclude that it neither confirms nor refutes Deputy Haber's testimony. Although the videotape does not show three, easily recognizable instances of traffic violations, Deputy Haber testified that she had a different view than the videotape and was able to observe more violations. Significantly, as noted by the trial court, Deputy Haber did not activate the videotape until turning onto Franklin Road, after observing several instances of traffic violations. The trial court found Officer Haber's testimony to be credible, and we do not conclude that the videotape contradicts this testimony or demonstrates that the record preponderates against the trial court's determination. Odom, 928 S.W.2d at 23. The record supports the trial court's determination that Officer Haber had reasonable suspicion to stop Gadke, and thus, there is no basis upon which to reverse the trial court's denial of Gadke's motion to suppress. Accordingly, Gadke is not entitled to relief.

## CONCLUSION

Based on the above authority and analysis, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE